UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARGARET L. SHEPARD,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

Case No. 1:16-CV-284

HON. PAUL L. MALONEY

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

### **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for

disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was forty-eight years of age as of her date last insured. (PageID.744, 765.) She possesses a high school education and previously worked as a mail carrier. (PageID.203, 948.) Plaintiff applied for benefits on July 14, 2010, alleging that she had been disabled since January 30, 2002, due to bilateral carpal tunnel syndrome, reflex sympathetic dystrophy (RSD) syndrome, complex regional pain syndrome, bipolar disorder, depression, lumbar spondylosis, degenerative disc disease, peripheral neuropathy, and arthritis. (PageID.126, 175–178.) Plaintiff's application was denied on November 10,

2010, after which time Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (PageID.133–137, 140–141.) On July 20, 2011, Plaintiff appeared with her counsel before ALJ Dennis Matulewicz for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.86–123.) In a written decision dated August 9, 2011, the ALJ determined that Plaintiff was not disabled. (PageID.46–65.) On August 17, 2012, the Appeals Council declined to review the ALJ's decision.

Plaintiff thereafter appealed the Commissioner's decision to United States District Court, and on November 18, 2013, District Judge Paul Borman from the Eastern District of Michigan determined the ALJ's decision was unsupported by substantial evidence and remanded the case. (PageID.840–852.) Accordingly, in an order dated May 27, 2014, the Appeals Council vacated the Commissioner's decision and remanded the case for further proceedings. (PageID.853–856.) Pursuant to the remand order, a second administrative hearing was conducted by ALJ Janice Holmes on October 9, 2014, at which time both Plaintiff and a VE testified. (PageID.760–791.) At the hearing, Plaintiff amended her onset date to June 1, 2007. (PageID.784, 924.) On December 31, 2014, ALJ Holmes issued her written decision concluding Plaintiff was not disabled. (PageID.739–759.) On January 14, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.686–692.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on June 30, 2007. (PageID.744.) Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Holmes determined Plaintiff's claim failed at step five. At step one the ALJ found that

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

Plaintiff had not engaged in substantial gainful activity during the period between her amended alleged disability onset date of June 1, 2007, and her date last insured of June 30, 2007. (PageID.744.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) complex regional pain syndrome / reflex sympathetic dystrophy; (2) degenerative disc disease; (3) bipolar/depression; and (4) status/post carpal tunnel release. (PageID.744.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.744–746.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> light work as defined in 20 CFR 404.1567(b) with the following: She would require a sit/stand option, at will, and would not take her off task more than 10%. She could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, stoop, kneel, crouch, crawl, and balance. She could occasionally handle, finger and feel bilaterally with the upper extremities; would have to avoid exposure to hazards such as unprotected heights, moving mechanical parts, and operating motor vehicles. She can perform simple, routine tasks; no contact with the public; and only occasional changes in the work setting.

(PageID.746–747.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.753.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work as a machine tender with 101,000 such positions existing in the national economy. (PageID.784–787.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.754.)

        Accordingly, the ALJ concluded that Plaintiff was not disabled from June 1, 2007, her

amended alleged onset date, through June 30, 2007, her date last insured. (PageID.754.)

## DISCUSSION

### 1.  ALJ Holmes Was Not Bound by the RFC From a Vacated Decision.

Plaintiff contends that ALJ Holmes' RFC determination is unsupported by substantial evidence. As an initial matter, however, she asserts that the ALJ erred by failing to explain her reasons for adopting an RFC that was materially different from that contained in ALJ Matulewicz's decision. (PageID.1330–1332.) In support, Plaintiff argues the rationale of the Sixth Circuit's decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) should apply. In *Drummond*, the claimant filed an application for benefits which was denied based on a finding that while she could no longer perform her past relevant work she could perform sedentary work which existed in significant numbers. *Id.* at 838. The claimant later filed another application for benefits which was denied based on the finding that she retained the ability to perform medium work. *Id.* at 838–39. After unsuccessfully appealing the matter in federal district court, the claimant pursued the matter in the Sixth Circuit. *Id.* at 839–40. On review, the *Drummond* court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 840–42. Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See, e.g.*, *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

This case, however, does not involve a prior final decision by the Commissioner. As the above discussed procedural history makes clear, the only final decision by the Commissioner in this case is ALJ Holmes' December 31, 2014, decision. All other decisions were vacated under the Appeals

Council's remand order. (PageID.853–856.) Thus, the ALJ was not bound by the findings of ALJ Matulewicz. *See Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003); *see also Perkins v. Comm'r of Soc. Sec.*, No. 1:13-CV-102, 2014 WL 619393, at *6 (S.D. Ohio Feb. 18, 2014), *report and recommendation adopted*, No. 1:13-CV-00102, 2014 WL 1872119 (S.D. Ohio May 8, 2014) (holding the same and collecting cases).

Plaintiff acknowledges that the rule of *Drummond* is "not directly applicable" but argues that the ALJ should have nonetheless explained why she was adopting a different RFC given the fact that both ALJs were considering the same closed period at issue. (PageID.1331–1332.) The Court disagrees. What is patent from the Appeals Council's remand order and the prior determination from the Eastern District is the fact that the prior ALJ got it wrong. Indeed, the decision from the Eastern District expressly directed the Commissioner to "reconsider the RFC." (PageID.850.) As such, the prior decision was vacated. There is no reason to require ALJ Holmes to revisit a prior decision that was unsupported by substantial evidence. Moreover, given the Eastern District court's mandate, it is not surprising that ALJ Holmes would develop a different RFC. Not only was she specifically required to look anew at the evidence, but she also had the benefit of additional evidence, such as Plaintiff's testimony at the second hearing. For all the above reasons, this argument is rejected.

    **2.    The RFC for Occasional Use of Plaintiff's Upper Extremities is Supported by Substantial Evidence.**

In her RFC determination, ALJ Holmes limited Plaintiff to only occasionally handling, fingering, and feeling bilaterally with the upper extremities. (PageID.746–747.) Continuing with her first claim of error, Plaintiff argues the ALJ failed to explain how she could use her upper extremities on an

7

occasional basis. (PageID.1320.)

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

Though raised in a claim of error, Plaintiff does little to develop this contention in the body of her argument. (PageID.1331.) It is raised only briefly and even then only in relation to other claims of error. Accordingly, this argument has been waived. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[P]laintiff develops no argument to support a remand, and thus the request is waived."). Even if this argument had not been waived, it would fail.

It appears Plaintiff's argument largely centers on a claim the ALJ erred by rejecting all the medical opinion evidence and then formulating an RFC that was not reflected in any medical opinion. (PageID.1333–1334.) To the extent Plaintiff argues the ALJ erred because no physician opined Plaintiff could occasionally use her upper extremities, she cannot succeed. It is well established that when evaluating the claimant's RFC, the ALJ is not required to base her RFC findings entirely on a physician's

8

opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity.") It not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support her claim of disability. 20 C.F.R § 404.1512(c). The medical evidence in this case has not confirmed the presence of a disabling impairment.

The ALJ provided a thorough and accurate discussion of the medical evidence. Regarding those records dating close in time to Plaintiff's amended alleged onset date, the ALJ discussed Plaintiff's visit in July 2006 with Dr. Nadine Jennings, a pain specialist. (PageID.748–749.) At that visit, Plaintiff reported that her pain was relatively stable and was under "satisfactory control" so long as she limited any repetitive activity. (PageID.1028.) There was full motor strength in both of the upper extremities. (PageID.1028.) The ALJ went on to note that:

> As for her RSD, a May 2007 physical exam revealed a positive impingement sign in the left shoulder, but there was full active abduction and forward flexion and internal rotation was equal bilaterally. There was *mild* weakness of the shoulder flexion on the left. There was some transmetacarpal tenderness but no bogginess of the small joints. Tinel's

9

> sign bilaterally was positive. Lumbar spine revealed *mild* tenderness over the sacrum. Range of motion showed full flexion at 60 degrees, extension was 30 degrees, and lateral rotation was 45 degrees bilaterally (Ex. 11F/5). A September 2007 EMG demonstrated *mild* underlying sensory peripheral neuropathy, decreased amplitude right median conductions consistent with previous carpal tunnel release, and no evidence of a cervical radiculopathy (Ex. 3F/32-33).

(PageID.750–751.) All this is an accurate reflection of the record. The ALJ also noted that Plaintiff reported in June 2007 that her quality of life was better. Her pain relief was adequate and fair. She had increased her function. (PageID.1024.) In sum, substantial evidence supports the ALJ's RFC determination. The Court does not doubt that Plaintiff is limited in the use of her upper extremities, however such limitations are adequately accounted for in the RFC, and this argument must be rejected.

### 3. The ALJ's Discussion of Dr. Narin Tanir's Opinion is Supported by Substantial Evidence.

On September 9, 2014, Dr. Narin Tanir completed a six page worksheet regarding Plaintiff's limitations. The worksheet asked Dr. Tanir to comment on Plaintiff's limitations during the period before June 30, 2007. (PageID.1284.) Dr. Tanir indicated that she had a speciality in internal medicine, and had been treating Plaintiff since September 2001. (PageID.1284.) Typical physical examination findings were a gait within normal limits and muscle spasms on the lumbar spine. (PageID.1285.) Plaintiff's complaints were of pain, and the pain was described by Dr. Tanir as moderate. Plaintiff also had mild to moderate fatigue. (PageID.1286.) Dr. Tanir further indicated Plaintiff was unable to perform both sedentary and light work as it was defined in SSR 83–10. (PageID.1287–1288.) Finally, the doctor stated Plaintiff's depression, anxiety, and other psychological factors affected her physical condition. She noted Plaintiff had major depression, negative self esteem, and was obsessed about her weight. (PageID.1289.)

10

> The ALJ gave this opinion "little weight" as:
>
> [T]his statement was years after the claimant's date last insured, June 30, 2007. Although the medical records from Dr. Tanir go back as far as 2002, they provide little information or support for allegations of disabled [sic]. Clinical exams do not fully support the claimant's contentions as to the magnitude of her symptomatology and dysfunction (Ex. 2F/110-140). Physical findings in general note gait/station normal. Upper and lower extremities are often normal with occasional tenderness to the knee (Ex. 2F/112, 123, 127, 129, 131).

(PageID.751.) Plaintiff claims the ALJ erred considering this opinion. (PageID.1332–1333.)

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. Tanir qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964

F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Before proceeding with the parties' arguments, the Court makes two initial observations. First, the Court questions whether Dr. Tanir's opinion qualifies as a medical opinion at all. There is little to the opinion other than an assertion that Plaintiff is incapable of even sedentary work. Opinions regarding whether a claimant is disabled are reserved to the Commissioner. *See Buxton v. Halter*, 246 F.3d 762, 763 (6th Cir. 2001) (noting that while treating physicians' opinions may be entitled to great weight, the ALJ is not bound by conclusory statements regarding whether a person is legally disabled, especially if the ALJ's decision is well reasoned). Second, the opinion largely consists of one word answers, circles and checkmarks. There were no supporting findings provided or attached, even though the worksheet specifically requested such. (PageID.1285–1286.) The Sixth Circuit has recently characterized such opinions as "weak evidence at best" that meet the "patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*,

12

644 F. App'x 468, 475 (6th Cir. 2016) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993)).

In any event, the ALJ's discussion here easily survives scrutiny. Plaintiff emphasizes the fact that although the opinion was completed after her date last insured, every page indicated that the opinion reflected Plaintiff's condition before that date. (PageID.1332.) But the ALJ did not state to the contrary, and Plaintiff provides no authority demonstrating it was reversible error for the ALJ to observe the later date of the opinion. The records cited by the ALJ also do not support the severity of doctor's opinion. (PageID.451, 462, 464, 466, 470, 1285.) This is not to say that Plaintiff is unencumbered, but rather merely to conclude that the ALJ has provided good reasons, supported by substantial evidence, for assigning little weight to the opinion. This claim of error is denied.

### 4. The ALJ's Credibility Assessment is Supported by Substantial Evidence.

At the administrative hearing, Plaintiff alleged that, during the period at issue, she was impaired to an extent much greater than that recognized by the ALJ. For example, she testified that she had difficulty turning objects or picking things up from the floor. (PageID.766.) She was unable to use a computer. (PageID.766.) He husband needed to assist her with zipping, buttoning, and with her shoes. (PageID.766.) She could never stoop without falling over. She could only walk for about ten minutes. (PageID.768.) She experienced pain after sitting for ten to fifteen minutes. (PageID.769.) She could not lift even a gallon of milk. (PageID.771.) The ALJ found these allegations, however, were "not entirely credible." (PageID.751.) Plaintiff claims the ALJ erred by stating her treatment was "conservative," referencing her daily activities, and failing to properly assess her RSD under SSR 03–2p. The Court disagrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment,

may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc.*

14

*Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In her discussion of the medical evidence, the ALJ observed that "claimant's treatment has been relatively conservative in nature. Her treatment has generally consisted of pain medications, which have been relatively effective in controlling her symptoms." (PageID.751.) Plaintiff disagrees with this characterization by claiming that her pain levels varied and that she also controlled her pain through rest and abstaining from activity. (PageID.1335.) Plaintiff fails to demonstrate reversible error. Indeed, while the records relied upon by Plaintiff note that her pain was improved after rest, Plaintiff does not argue how such takes her treatment outside the realm of what may be characterized as conservative. Both notes from May and July of 2007 indicate her pain relief was adequate and fair, at least most of the time. (PageID.1021, 1026.) Moreover, despite Plaintiff's claim she needed to rest, both reports indicate she had increased her functioning, was performing her own housework, and indeed was working. (PageID.1021, 1026.) While Plaintiff's condition may have deteriorated after her date last insured such that she required more extensive treatment, the ALJ did not err in observing the treatment prior to her date last insured was conservative.

15

Plaintiff's argument regarding her daily activities reflects a misunderstanding of the ALJ's decision. The ALJ did not use these activities, as Plaintiff appears to claim, to demonstrate that Plaintiff was capable of performing light work, but rather used them to demonstrate that the severity of Plaintiff's allegations was not completely credible. (PageID.751.) This was an appropriate observation. *See* 20 C.F.R. § 404.1529(c)(3). Plaintiff's ability to drive a car, prepare simple meals, and go out to eat all undercut her assertions regarding the limitations of her upper extremities. This argument therefore, must be rejected.

Finally, Plaintiff argues the ALJ "failed to mention SSR 03–2p, and the ALJ's selective citation of the evidence does not address the actual RSD symptoms and related pain." (PageID.1337.) This particular Ruling concerns how to evaluate disability claims asserted by claimants suffering from Reflex Sympathetic Dystrophy Syndrome, (RSD) also known as Complex Regional Pain Syndrome. *See* SSR 03–2P, 2003 WL 22399117 (S.S.A., Oct. 20, 2003). While Plaintiff is correct that the ALJ's decision does not explicitly reference this Ruling, she fails to provide any authority demonstrating that it was reversible error for the ALJ to do so. The fact that the ALJ did not cite to the ruling does not mean she failed to comport with the ruling's requirements. In other cases that have remanded for failure to comply with SSR 03–2p, the ALJ not only failed to identify the ruling, but also failed to address the impairment during the sequential evaluation. *See*, *e.g.*, *Bernstein v. Astrue*, No. 309-CV-17-J-34MCR, 2010 WL 746491, at *5 (M.D. Fla. Mar. 3, 2010). That is not the case here. The ALJ evaluated Plaintiff's case under the traditional five step sequential evaluation, as the Ruling requires. *See* SSR 03–2P, 2003 WL 22399117, at *6. At step two, the ALJ determined that Plaintiff's RSD amounted to a severe impairment. At step three, the ALJ found Plaintiff did not meet or equal a listing. (PageID.744.) Next, the ALJ was

required to:

> evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

*See* SSR 03–2P, 2003 WL 22399117, at *6. Plaintiff references two treatment records predating her onset date by several years to argue that the ALJ's analysis falls short. As an initial matter, it is not the case that the ALJ failed to address these records. The ALJ explicitly discussed the December 2000 record, and referenced the October 2000 record. (PageID.748.) While the ALJ could have, perhaps, more fully discussed these records, the ALJ is not required to discuss every piece of evidence, and her failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); accord *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006). Moreover, Plaintiff fails to demonstrate the ALJ erred in evaluating the intensity, persistence, or functionally limiting effects of Plaintiff's RSD. As noted above, the ALJ gave a thorough recitation of the medical evidence, including the record regarding Plaintiff's RSD. She then found Plaintiff's complaints were not fully credible based, in part, on Plaintiff's conservative treatment and record of daily activities. All this provides substantial evidence in support of the ALJ's decision. Plaintiff has not demonstrated reversible error.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision is supported by substantial evidence and therefore will be **AFFIRMED.**

A separate judgment shall issue.


Dated:  January 11, 2017                                          /s/ Paul L. Maloney
                                                                                    PAUL L. MALONEY
                                                                                    United States District Judge